UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jephthe Turenne, *on behalf of himself and all others similarly situated,*<br><br>                                          *Plaintiff,*<br><br>        -against-<br><br>Wireless Vision Holdings, LLC,<br><br>                                          *Defendant.* | **RULE 23 CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

"Plaintiff" Jephthe Turenne on behalf of himself and all others similarly situated brings this action against "Defendant" Wireless Vision Holdings, LLC ("Wireless Vision Holdings"), upon personal knowledge as to himself and upon information and belief as to other matters, alleges as follows:

1. Plaintiff Jephthe Turenne is an adult, over eighteen years old, a citizen of New York and resides in Nassau County.

2. Plaintiff and the Proposed Class were, throughout their entire employment with Defendant, covered, non- exempt employees within the meaning of the New York Labor Law ("NYLL").

3. Wireless Vision Holdings, LLC, is listed as a current entity in New York's Department of State Division of Corporations records ("DOS") as a foreign limited liability company, formed under Delaware law its service of process address in the care of "The LLC" at 40700 WOODWARD AVENUE, SUITE 250, BLOOMFIELD HILLS, MI, 48304.  The entity on Plaintiff's pay stubs is "Wireless Vision Holdings, LLC" and the employer address listed matches the service of process address listed in Wireless Vision Holdings, LLC's DOS entry.

4. Wireless Vision maintains a website, listing all of its 4,000 locations nationwide,

https://wirelessvision.com/locations/?wpbdp_view=all_listings, including its 71 T-Mobile store locations in New York State. Wireless Vision's website presently includes in its locations list both Brooklyn locations where Plaintiff worked for Defendant.

5. Wireless Vision's website also lists its headquarters as the same address, 40700 WOODWARD AVENUE, SUITE 250, BLOOMFIELD HILLS, MI 48304, found on pay stubs provided by Defendant to Plaintiff.

6. Defendant had the power to hire and fire employees like the Plaintiff, and set the conditions of their employment, including where they work; what they do; and how much they are paid.

7. Defendant is considered a large employer, having at least 11 or more employees during the duration of Plaintiff's employment.

8. Defendant maintained control, oversight, and direction over Plaintiff and the proposed class in regards to timekeeping, payroll, and other employment practices, and functioned as an employer pursuant to the NYLL.

9. Defendant, by virtue of ownership, management, and control over the wages and work of Plaintiff and the proposed class, are considered an employer under the NYLL.

10. Defendant applied the same employment policies, practices, and procedures to all non-exempt workers, including policies, practices, and procedures with respect to its uniform policy and the frequency with which it paid its employees and the way in which it provided them with wage notices and periodic wage statements.

11. Defendant, by virtue of ownership, management, and control over the wages and work of Plaintiff, is considered an employer under the NYLL §190(3).

## JURISDICTION AND VENUE

12. This Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1332(d), because the amount in controversy against the Defendant in this matter exceeds the sum or value of $5,000,000, exclusive of interest and costs, and Plaintiff and the members of the proposed class are citizens of states different from that of Defendant.

13. This court also has diversity jurisdiction over this action pursuant to 28 U.S.C.A. § 1332(a)(1) and (c)(1). There is complete diversity of citizenship between the opposing parties since Plaintiff resides in New York State and is a citizen of that state. While Defendant is a citizen of Delaware.

14. There are over 400 members in the proposed class.

15. Defendant is subject to personal jurisdiction in New York as they do business in New York.

16. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendant conducts business in this District.

## FACTS

17. Defendant operates approximately 71 T-Mobile wireless stores in New York State.

18. Defendant is an employer of Plaintiff under the New York Labor Law.

19. Defendant's employees sell T-Mobile cell phones, cell phone service plans, and accessories. Approximately 3-5 employees work in every one of Defendant' T-Mobile locations.

20. Defendant had and continue to have the power to hire and fire the employees; supervise and control employee work schedules or conditions of employment; determine the rate and method of payment; and maintain employment records.

21. All of the below factual allegations are, upon information and belief, consistent among Plaintiff and members of the Class.

22. Plaintiff pleads the below facts to the best of his recollection and reserves the right to amend these pleadings upon receiving discovery in this matter, including payroll and employee records that Defendant are required to maintain under the New York Code of Rules and Regulations ("NYCRR").

23. Plaintiff Jephthe Turenne worked for Defendant from around February 2016 until around November 2018, primarily in Kings County. Plaintiff began working for Defendant at their Flatbush location, Brooklyn, New York and was later moved to their Bed Stuy location at 2166 Nostrand Avenue, Brooklyn, New York 11210.

24. Plaintiff worked for Defendant full time, working 5-6 days per week, often more than 40 hours each week.

25. Plaintiff's job duties included selling customers cell phone and cell phone plans, checking them out at a cash register, and performing various other customer services duties. In addition, Plaintiff was responsible for various physical tasks that collectively accounted for more than 25% of his job duties, including: performing general cleaning tasks in Defendant' stores, cleaning the stores' bathrooms, receiving deliveries, unboxing and stocking merchandise, cleaning the stores' windows, and shoveling snow and ice on the sidewalk outside depending on weather.

26. Plaintiff and the Proposed Class were paid at or near minimum wage at all times.

27. At all times, Defendant paid Plaintiff on a bi-weekly basis.

28. Plaintiff and proposed class members spent at least 25% of the time performing physical tasks that qualify them as Manual Workers as that term is used in Section 190(4) of the New York Labor Law.

29. Defendant required Plaintiff and the proposed class to wear a uniform including shirt with T-Mobil logo.

30. Plaintiff's rate of pay was always at or below the applicable minimum wage for a large employer in New York City on a weekly basis accounting for all compensation owed, including uniform maintenance pay.

31. Plaintiff was required to wear a uniform at all times while employed by Defendant.

32. Plaintiff did, in fact, wear the uniform every shift.

33. 33. Defendant did not launder Plaintiff's required uniforms, nor did Defendant offer to launder the required uniforms.

34. Plaintiff's uniform was issued by Defendant to Plaintiff for the express benefit of Defendant and it was a condition of Plaintiff's employment to wear it in a clean condition during each shift.

35. Defendant never paid any uniform maintenance pay.

36. Plaintiff was entitled to additional pay for time spent off the clock and money spent in laundering and maintaining Defendant's uniform.

37. Because of Defendant's improper compensation policies, Plaintiff was deprived of pay, in direct violation of the NYLL

38. This pattern of conduct was continuous throughout Plaintiff's employment.

39. Defendant's unlawful conduct has been widespread, repeated, and consistent.

40. Defendant implemented a policy across all stores and for all employees which is the same policy Plaintiff was subject to–requirement of a work uniform; no option for employer to launder the uniform; and no uniform maintenance pay.

41. Because of Defendant's improper compensation policies, Plaintiff was deprived of timely and weekly pay, in direct violation of the NYLL.

42. This pattern of conduct was continuous throughout Plaintiff's employment.

43. Defendant' unlawful conduct has been widespread, repeated, and consistent.

44. Plaintiff Turenne and other similarly situated Manual Workers employed by Defendant suffered actual and acute injuries as a result of Defendant' failure to pay weekly wages. The timely payment of earned wages were and are crucial to Turenne's ability to pay day to day and monthly expenses, especially due to the New York area's high cost of living. Defendant' conduct in paying Turenne's wages late throughout his employment resulted in him having to pay bills late on more than one occasion.

45. Defendant' late wage payments also deprived Turenne and other similarly situated Manual Workers of the time value of their earned money, resulting in tangible financial loss calculated as interest and in other amounts; and loss in the form of the negative impact on their ability to save, invest, and plan for the future. Defendant reaped large rental fees from its customers as a direct result of its Manual Workers' labor, taking in hundreds of millions in revenue, while unlawfully withholding from and paying late its employees who are least able to weather these unjust delays.

## RULE 23 CLASS ACTION ALLEGATIONS

46. Plaintiff brings this action on his own behalf and on behalf of all other similarly situated non-exempt employees paid on on an hourly basis who worked for Defendant in the State of New York at any time during the period commencing six years prior to the filing of this action and continuing until such further date as the practices complained of are discontinued (the Class Period")

47. The Class Period is further expanded to account for all claims made timely by virtue of Governor Cuomo's March 20, 2020 executive order, Executive Order (A. Cuomo) No. 202.8 (9 NYCRR 8.202.8), and all subsequent and similar orders, including but not limited to, Executive Orders 202.14, 202.28, 202.38, 202.48, 202.55, 202.60, 202.67, and 202.72.

48. The Proposed Class is defined as:

> All exempt, hourly employees of Defendant in the State of New York between the date six years preceding the filing of this complaint and the date a class is certified in this action.

49. The members of the Proposed Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

50. There are more than 400 class members and the Plaintiff's claims are typical of those other members, in that any one would seek the same discovery, make the same legal arguments, and rely on the same factual record for summary judgment.

51. Plaintiff and the Proposed Class have all been injured in that they have been uncompensated, under-compensated, or untimely compensated due to Defendant' common policies, practices, and patterns of conduct.

52. Defendant' corporate-wide policies and practices affected everyone who worked in every store in the same way.

53. Plaintiff is able to fairly and adequately protect the interests of the Proposed Class and have no interests antagonistic to it.

54. Plaintiff is represented by attorneys who are experienced and competent to bring this action.

55. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate Defendant. Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

56. Common questions of law and fact exist as to the Proposed Class that predominate over any questions only affecting Plaintiff and/or each member of the New York Class individually and include, but are not limited to, the following:

> 1. What job duties are performed by the employee?
>
> 2. What is the frequency of pay for the employee?
>
> 3. Does the employee spend at least 25% of the time at work engaged in physical labor?
>
> 4. Whether Defendant required a uniform?

# FIRST CAUSE OF ACTION

## ON BEHALF OF PLAINTIFF AND THE CLASS

*Violation of the New York Labor Law – Failure to Pay Timely Wages*

57. Plaintiff re-alleges and re-avers each and every allegation and statement contained in the paragraphs above of this Complaint as if fully set forth herein.

58. The timely payment of wages provisions NYLL § 191 and its supporting regulations apply to Defendant and protect Plaintiff and the Proposed Class.

59. Defendant failed to pay Plaintiff and Proposed Class on a timely basis as required by NYLL § 191(1)(a), which resulted in an underpayment.

60. Manual Workers, as contemplated by NYLL § 191, are "dependent upon their wages for sustenance." *People v. Vetri*, 309 N.Y. 401, 405 (1955).

61. All of Defendant' T-Mobile store employees are Manual Workers as that term is used in Section 190(4) of the New York Labor Law.

62. As such, the failure to provide wages owed to Plaintiff and all others similarly situated Manual Workers, according to NYLL § 191, constitutes an "especially acute injury." *See Caul v. Petco Animal Supplies, Inc.*, No. 20 Civ. 3534 (RPK) (SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sep. 27, 2021) (citing *Vega v. CM & Associates. Contr. Mgmt.*, LLC, 175 A.D.3d 1144, 1146 (N.Y. 1st Dept. 2019)).

63. Defendant' conduct also constitutes an "injury in fact" suffered by Plaintiff under Article III that is within the federal judicial power because Plaintiff has "suffered an injury in fact that is concrete, particularized, and actual or imminent." *See Caul v. Petco* (infra).

64. Due to Defendant' violations of the NYLL, Plaintiff and the New York Class are entitled to recover from Defendant compensatory damages in an amount to be determined in this

action, plus the amount of the underpayments caused by their untimely wage payments as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

## SECOND CAUSE OF ACTION

## ON BEHALF OF PLAINTIFF AND THE CLASS

*Violation of the New York Labor Law – Failure to Provide Wage Notice*

65. Plaintiff re-alleges and re-avers each and every allegation and statement contained in the paragraphs above of this Complaint as if fully set forth herein.

66. Defendant willfully failed to supply Plaintiff with wage notices, as required by NYLL, Article 6, § 195(1), in English or in the language identified by Plaintiff as their primary language, containing Plaintiff's rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; *the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191*; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary. (emphasis added)

67. Through their knowing or intentional failure to provide Plaintiff with the wage notices required by the NYLL, Defendant willfully violated NYLL, Article 6, §§ 190 et seq., and the supporting New York State Department of Labor Regulations.

68. Due to Defendant' willful violations of NYLL, Article 6, § 195(1), Plaintiffs are entitled to statutory penalties of fifty dollars each daythat Defendant failed to provide Plaintiff

with wage notices, or a total of five thousand dollars each, reasonable attorneys' fees, costs, and injunctive and

## THIRD CAUSE OF ACTION

## FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFFS AND THE CLASS

*Violation of the New York Labor Law Unpaid Wages*

*Unreimbursed Uniform Purchase Maintenance Costs*

69. Plaintiff alleges and re-alleges all of the other paragraphs contained herein.

70. Defendant required Plaintiff and the Class to wear a uniform.

71. Defendant did not launder Plaintiff's or the Class's required uniforms, nor did Defendant offer to launder them.

72. Plaintiff and the Class's uniforms were issued by Defendant for the expressed benefit of Defendant and it was a condition of their employment to wear them during each shift.

73. Defendant never paid to Plaintiff or the Class any uniform maintenance pay or reimbursement for the cost of maintaining uniforms.

74. Plaintiff and the Class routinely spent time off-the-clock and money to clean and maintain their uniforms consistent with the uniform appearance standards Defendant required.

75. The hourly rate paid by Defendant to Plaintiff and the Class were either the applicable minimum wage, or a rate that although above the minimum wage was effectively below the minimum wage when calculating the unpaid uniform maintenance pay.

76. Defendant's conduct is in violation of Article 19 of the New York Labor Law and its supporting regulations, including 12 N.Y.C.R.R. Part 142 the Minimum Wage Order for Miscellaneous Industries and Occupations.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, demands judgment against Defendant as follows:

a. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b. Designation of Plaintiff Turenne as representative of the New York Rule 23 Class and counsel of record as Class Counsel;

c. Compensatory damages in an amount to be determined in this action;

d. Liquidated damages permitted by law pursuant to the NYLL;

e. An award of civil penalties for the wage notice violation;

f. Prejudgment and post-judgment interest;

g. Reasonable attorneys' fees and costs of the action on the basis of being the prevailing party in a NYLL action to recover wage underpayments; and

h. A jury trial on these issues to determine liability and damages;

i. Such other relief as this Court shall deem just and proper.

Dated:  New York, NY
        May 16, 2023

*Respectfully Submitted,*

Mohammed Gangat, Esq.
LAW OFFICE OF MOHAMMED GANGAT
675 Third Avenue, Suite 1810,
New York, NY 10017
718-669-0714
mgangat@gangatpllc.com